IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| TANESHIA S. PYLES, | ) | CASE NO.1:19-CV-00634 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

Before me[1] is an action by Taneshia S. Pyles seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied her 2016 applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed a transcript of the administrative proceedings.[4] Pursuant to my initial orders,[5] the parties have briefed their positions,[6] filed supplemental fact sheets and charts,[7]

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge John R. Adams. ECF No. 15.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF Nos. 6, 11.
[6] ECF Nos. 12 (Pyles), 19 (Commissioner), 20 (Pyles reply).
[7] ECF Nos. 13 (Pyles), 19, Attachment 1 (Commissioner).

1

met and conferred as to reducing or clarifying the issues,[8] and have participated in a telephonic oral argument.[9]

For the following reasons the decision of the Commissioner will be affirmed.

**I.**

The relevant facts show that Pyles, age 37 on the alleged onset date, has a high school education and formerly worked as a packer on an assembly line, a telemarketer, and as a temporary employee in customer service.[10] Although the ALJ found that Pyles had some level of physical impairment, such as a thyroid condition and a history of alcohol use, all of the severe impairments were found to be mental, specifically: history of a learning disorder, bipolar disorder, major depression, anxiety and affective disorder.[11] But the ALJ concluded that none of these mental limitations met or medically equaled a listing[12] because Pyles did not have a "marked or extreme limitation in any area of functioning."[13]

The ALJ considered the opinion evidence and gave great weight to the RFC in a prior decision issued in 2015 and to two state agency consultants who gave opinions in

---

[8] ECF No. 18.
[9] ECF No. 22.
[10] Tr. at 37-39.
[11] *Id*. at 18.
[12] *Id*.
[13] *Id*. at 21.

2

2016 and 2017.[14] But the ALJ gave only partial weight to the 2016 and 2017 opinions of Dr. Marilyn Malkin, Ph.D., who was Pyles's treating psychologist.[15]

In doing so, the ALJ noted Dr. Malkin's extended treating relationship with Pyles and explicitly cited with approval to those portions of Dr. Malkin's opinions dealing with Pyles's ability to understand, remember and follow directions, as well as to completing simple, repetitive tasks.[16] The ALJ observed that these opinions aligned with Pyles's "consistently benign" mental status examinations that showed "intact memory, cognition, logical thought process, and good judgment and insight."[17] The ALJ also agreed with Dr. Malkin that Pyles "has limitations on social interaction, given her panic attacks and history of conflict with others."[18]

But the ALJ grounded the assignment of partial weight to Dr. Malkin's opinions on the fact that Dr. Malkin was "vague" as to showing why stress would prevent Pyles from a timely completion of tasks.[19] The ALJ also stated that Dr. Malkin's previous findings that Pyles had fair judgment and intact memory failed to support Dr. Malkin's extreme or marked limitations in the "paragraph B" criteria.[20] Finally, the ALJ observed that there

---

[14] *Id*. at 24.
[15] *Id*.
[16] *Id*. at 24-25.
[17] *Id*. at 25.
[18] *Id*.
[19] *Id*.
[20] *Id*.

were no objective findings to support the opinion that Pyles would miss more than four days of work per month.[21]

In addition, the ALJ gave only partial weight to the 2018 functional opinion of Mary Neubrander, one of Pyles's mental health counselors.[22] Here, the ALJ recognized the evidence of Pyles's "mood swings and labile affect, impulsive behavior, and distractibility" would support moderate limitations in some functional areas, but found that the evidence of record would not support extreme limitations in other areas, stating that Neubrander's opinion in that regard "overstates the claimant's restrictions and is inconsistent with the evidence."[23] Moreover, the ALJ observed that the evidence showed that Pyles was able to independently manage the tasks of daily living and, despite her history of aggressive behavior, "presented to medical providers as pleasant, cooperative and engaged, with good eye contact."[24] Thus, the ALJ concluded that there were lesser limits in these areas of functioning than were opined by Neubrander.[25]

Pyles now claims that the ALJ erred in failing to give great or controlling weight to the opinions of Dr. Malkin and Mary Neubrander, her mental health counselor, while giving great weight to the RFC from a 2015 decision and to state agency consultants who did not review Dr. Malkin's opinion nor that of Mary Neubrander.[26] Pyles further contends

---

[21] *Id.*
[22] *Id.*
[23] *Id.* at 25-26.
[24] *Id.* at 26.
[25] *Id.*
[26] ECF No. 13 at 10-13.

that the error in discounting Dr. Malkin's opinion resulted in the ALJ failing to conclude that Pyles met the listings for depressive disorders, anxiety disorders, neurodevelopment disorders and trauma and stressor related disorders.[27]

Finally, Pyles argues that the RFC did not "appropriately account for [her] limitations in concentration, persistence and pace and probable rate of absenteeism."[28] Rather, she asserts, the totality of the evidence showed that she "is living a marginal existence, in a highly structure environment, around close family members, with little or no ability to adapt to changes not already a part of her daily life."[29]

## II.

The ALJ's challenged findings are analyzed under the well-known rubrics of substantial evidence and the so-called treating physician rule.[30]

As the Commissioner notes, Pyles's argument that she should have met a listing depends on whether the functional opinions of treating psychologist and counselor should have been given controlling weight.[31] Similarly, Pyles's contention that the RFC was

---

[27] *Id*. at 18-20.
[28] *Id*. at 23.
[29] *Id*.
[30] The treating physician rule established a rebuttable presumption that the opinion of a treating physician that was well-supported by clinical evidence and consistent with the evidence as a whole was entitled to controlling weight. It further set forth articulation requirements as to the weight assigned. Effective March 27, 2017, new regulations went into effect that
[31] ECF No. 19 at 5.

5

insufficiently restrictive also depends on giving greater weight to the treating source opinions.

**_Dr. Mackin_** Therefore, with that in mind, I turn first to the opinions of Dr. Malkin. As set out above, the ALJ was careful to clearly acknowledge Dr. Malkin as a treating source and to further analyze Dr. Markin's opinions in some detail. As recounted above, the ALJ made explicit reference to various individual elements of those opinions that were consonant with the medical record.

Moreover, the ALJ was clear as to those portions of Dr. Malkin's opinions that she found to be either "vague" or not supported by the evidence of record. To that latter point, the ALJ, on the record, determined that the clinical findings that showed Pyles had fair judgment and intact memory were inconsistent with Dr. Malkin's opinion as to the severity of Pyles's impairments under the "B paragraph" of Listing 12.05.[32]

The "B paragraph" requires the claimant to establish significantly sub-average intellectual functioning either by (a) IQ score; (b) an extreme limitation in one area of mental functioning or a marked limitation in two areas; or (c) evidence that intellectual or adaptive functional limits began prior to age 22.[33] Those areas within subparagraph (b) are: (1) understand, remember, and apply information; (2) interact with others; (3) concentrate, persist and maintain pace; and (4) adapt or manage oneself.[34]

---

[32] Tr. at 25.
[33] *Id*. at 20 (quoting 12.05).
[34] *Id*.

The ALJ then initially cited Pyles's early educational records to show that her full scale IQ was above 70, which is the threshold set out in the Listing.[35] Thus, neither subparagraph (a) nor (c) would be applicable.

In specifically addressing Dr. Malkins' opinions neither her 2016 or 2017 opinion directly use the four "B paragraph" areas, nor did they specifically categorize Pyles's limitations in terms of "moderate," "marked" or "extreme."[36] Only her 2018 opinion employed the language of the regulations.[37]

As to the first domain – the ability to understand, remember and apply information – Dr. Malkin's 2018 opinion stated that Pyles had a marked limitation in that area.[38] The ALJ concluded that Pyles had a moderate restriction in this domain.[39] To that point, the ALJ noted that Pyles testified to struggling with her memory and needing to write things down, she nonetheless showed an intact memory during examination.[40] Dr. Malkin, in a January 2017 opinion, stated that Pyles had "fair insight and judgment" and "intact memory," as well as noting that she was able to "stay on track" during therapy sessions.[41] In addition, the ALJ gave great weight to the 2016 and 2017 opinions of state agency

---

[35] *Id.* at 20-21.
[36] See, *id.* at 421-26 (opinion dated Sept. 21, 2016); 451-55 (opinion dated February 7, 2017). There is no requirement that a physician use the terms of the regulation in an opinion, and if other terms are employed to describe a claimant's limitations, it is the ALJ who must look to the merits of the physician's opinion and render it in terms of the regulations. *Schink v. Commissioner*, 935 F.3d 1245, 1261 (11th Cir. 2019).
[37] Tr. at 477-482.
[38] *Id.* at 481.
[39] Tr. at 19.
[40] *Id.*
[41] *Id.* at 454.

consultants who found that Pyles could perform simple tasks with routine changes, but not at production-rate pace.[42] Finally, the ALJ noted that Pyles had no difficulty in recalling her vocational and medical history during the hearing.[43]

In sum, substantial evidence supports the ALJ's conclusion that Pyles' limitation in this domain is moderate.[44]

In the second domain of interacting with others, the ALJ again found a moderate limitation.[45] Dr. Malkin, in the 2018 opinion, found that Pyles's had an "extreme" limitation in this domain.[46] Here, the ALJ acknowledged that Pyles has a history of conflict with neighbors and co-workers, but also noted that Pyles lives with her children,[47] has interacted appropriately with her medical providers, and acted appropriately at the hearing.[48] Just as important, the state agency consultants found that Pyles had a moderate limitation in this domain[49] that required some limitations on social interactions.[50]

---

[42] *Id.* at 24.
[43] *Id.* at 19.
[44] *Id.* For a limitation to be "marked," as Dr. Malkin opined, the claimant's sustained functioning in this area would need to be "seriously limited." *Id.* at 18.
[45] *Id.* at 19.
[46] *Id.* at 481. An extreme limitation is where a claimant is unable to function in this area on a sustained basis. *Id.* at 18.
[47] Despite that, Pyles testified that she does not interact with her family. *Id.* at 21.
[48] *Id.* at 19.
[49] See, *id.* at 143.
[50] *Id.* at 144.

Again, while there is no doubt that Pyles has limitations in this domain, there is substantial evidence to support the ALJ's finding that Dr. Malkin's opinion of extreme limitations was overstated.

As to the domain of concentration, persistence, and pace; the findings described above that show Dr. Malkin's own observation that Pyles was able to "stay on track" during therapy sessions, and the state agency consultants who found that Pyles was able to perform simple tasks with routine changes, but not at production-rate pace. These provide substantial evidence for the conclusion that Pyles did not have an "extreme" limitation in this domain, as Dr. Malkin opined, but rather had a moderate limitation.[51]

Finally, as to adapting or managing oneself, the ALJ found only a mild limitation,[52] not an extreme one, as did Dr. Malkin.[53] Here, the ALJ noted that while Pyles does have "difficulty coping with stress and changes in routine," she nonetheless independently "completes household chores, prepares meals, shops in stores, uses public transportation, manages finances and attends to her personal care."[54] Again, the ALJ's determination of a mild limitation is supported by Dr. Malkin's own 2017 opinion that detailed Pyles's ability to care for her own needs independently in multiple areas, even noting that Pyles "is reliable

---

[51] *Id.* at 19.
[52] *Id*. at 19.
[53] *Id*. at 481.
[54] *Id*. at 19.

9

in keeping appointments."[55] Dr. Malkin also made a point of noting that Pyles's personal appearance was "neat, clean."[56]

Thus, as set forth, I find that substantial evidence supports the weight assigned to the opinions of Dr. Malkin.

*Ms. Nuebrander* While the prior discussion about the opinions of Dr. Malkin has application to the functional opinion Mary Neubrander that Pyles has extreme limitations in the domains of her ability to interact with others, to adapt or manage herself and in the area of concentration persistence and pace, with a marked limitation as to the ability to understand, remember and apply information.[57]

I observe here once more that Dr. Malkin herself stated in 2017 that Pyles "should be able to do a simple, routine, repetitive task,"[58] and that this functional opinion is similar to the opinions of the two state agency consultants. Although Pyles now seems to argue that the 2016 and 2017 opinions of the state agency consultants should be discounted because they are somehow "outdated,"[59] Pyles does not show what has changed, beyond the mere passage of time, to make the early assessments invalid. Indeed, the most recent opinion from Dr. Malkin in 2018 shows that Pyles's condition has largely been static, in that it is replete with references to the fact that Pyles's condition "seems unlikely to

---

[55] *Id*. at 455.
[56] *Id*. at 454.
[57] *Id*. at 513.
[58] *Id*. at 453.
[59] ECF No. 12 at 12; see also, ECF No. 20 at 4.

change"⁶⁰ and that much of the mental health treatment she has been receiving "does not seem to be having much effect in changing her behavior."⁶¹

I further note that Ms. Neubrander is a counselor and not an acceptable medical source under the regulations.⁶² As such, while her opinion should be considered, it is entitled to no special presumptions of weight and the ALJ is not required to give good reasons for whatever weight is assigned.⁶³

Accordingly, inasmuch as the ALJ did address the functional opinion of Ms. Neubrander and assigned it weight, giving reasons for the weight assigned, I find no error in the ALJ's handling of Ms. Neubrander's opinion.

## III.

For the reasons stated, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated: March 27, 2020                               s/William H. Baughman Jr.
                                                    United States Magistrate Judge

---

⁶⁰ Tr. at 478.
⁶¹ *Id*. at 481.
⁶² *Goodling v. Berryhill*, 2017 WL 9478428, at *8 (N.D.Ohio June 22, 2017) (citation omitted).
⁶³ *Darling v. Commissioner of Social Security*, 2015 WL 5877828, at * 9 (E.D. Mich. Oct. 8, 2015) (citations omitted).